J-S29041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LENNY MARTI DUNNIVAN | : | |
| | : | |
| Appellant | : | No. 895 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 5, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0003333-2022

BEFORE:  DUBOW, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:           **FILED:  September 26, 2024**

Lenny Marti Dunnivan (Appellant) appeals from the judgment of sentence imposed after the trial court found him guilty of recklessly endangering another person, driving while operating privilege is suspended or revoked, reckless driving, careless driving, driving outside a roadway laned for traffic, and abandonment of vehicles.[1]  We affirm.

The trial court recounted the following facts:

In the early morning hours of December 27, 2021, Payge Linkenheimer[] was driving northbound on Interstate Route 279 toward Cranberry Township and observed what appeared to be a vehicle accident.  A white Nissan vehicle was stopped off of the right side of the roadway, but part of the rear of the vehicle dangerously extended onto that roadway.  She stopped to see if anyone was injured and observed Appellant nearby.  [Ms.

---

[1] 18 Pa.C.S. § 2705; 75 Pa.C.S. §§ 1543(b)(1)(i), 3736(a), 3714(a), 3309(1), and 3712(a).  In addition, the trial court found Appellant not guilty of accidents involving an unattended vehicle and accidents involving death while not properly licensed.  75 Pa.C.S. §§ 3745(a) and 3742.1(a)(1).

Linkenheimer] asked if she could help him. Appellant appeared confused[,] saying he had been coming from the casino and that he did not know what happened. She inquired whether he had called the police[,] or if she should call AAA to remove the car from the road, considering how far it was protruding into the lane of travel[;] Appellant declined. Appellant convinced her to drive him to his mother's home in a nearby community.

Pennsylvania State Trooper, Michael Rosky, who is trained in basic accident reconstruction, was on patrol on the date of the incident and responded to the accident scene. The incident was reported as a two-vehicle crash, which required a victim to be extricated from a second vehicle[,] fatally crashed nearby[,] by the fire department and EMS. Trooper Rosky's preliminary assessment of the scene indicated that the vehicle Appellant had been driving had collided into a center median guardrail and crashed[,] eventually being driven to the berm of the road[,] but part of the rear of the vehicle was left protruding into the right lane. The second vehicle, driven by the victim, subsequently collided with that part of the Nissan protruding into his lane of travel, thus causing th[e victim's] vehicle to impact violently into a tree. The victim died as a result of the injuries he sustained in the collision[, and his son, who was a passenger, sustained serious injuries].

Pennsylvania State Trooper, Joshua Russo, responded to the unfolding accident investigation[,] and later in the day (December 27, 2021) interviewed the owner of the white Nissan Sentra, Roxanne Lawniczak, Appellant's mother. During the course of the interview and investigation, he learned that Appellant had taken her car the day before and returned home in the early morning hours of December 27, 2021. Appellant was visibly intoxicated, making statements to his mother that her vehicle was totaled in an accident and that he almost died. Appellant then locked himself in his room upstairs. Trooper Russo was unable to make contact with Appellant that evening despite trying to gain consensual entrance into his bedroom where Appellant had locked himself inside.

Pennsylvania State Police Corporal, Todd Stephenson, an expert in the field of accident reconstruction, testified that the first collision involving the white Nissan, driven by Appellant, occurred when Appellant's vehicle traveled off the road onto the right shoulder of the road and a steering maneuver put the vehicle in a yaw maneuver/movement. This caused the vehicle to rotate counterclockwise across the lanes of travel[,] striking a high-

tension cable center median and coming to rest on the left shoulder or left lane of the highway. The heavily damaged vehicle was then driven to the berm of the road, but part of the rear of the vehicle was left protruding onto the roadway. The second vehicle, which was traveling northbound in the right-hand lane, struck the left rear corner of the Nissan, which was protruding into the lane of travel, forcing the second vehicle into a clockwise rotation into a grassy area where it violently struck a tree causing the death of the driver [and injuries to the passenger].

At the time of the incident, Appellant was not properly licensed to drive a vehicle, with his license having been suspended for DUI violations.

Trial Court Opinion (TCO), 1/17/24, at 5-7 (citations and footnote omitted).

The Commonwealth charged Appellant with eight offenses. The trial court explained:

Appellant proceeded to a non-jury trial on December 6, 2022. At the conclusion of the testimony[,] the trial was continued until May 2, 2023[, to allow Trooper Rosky to prepare an expert report. N.T., 12/6/22, at 21]. On May 18, 2023, the [t]rial [c]ourt returned a verdict of guilty as to counts one through six and not guilty at counts seven and eight.

On June 5, 2023, Appellant was sentenced by the [t]rial [c]ourt as follows:

Count one: recklessly endangering another person — eleven and half to twenty-three months incarceration in the Allegheny County Jail;

Count two: driving while operating privilege is suspended or revoked — to a [mandatory] period of incarceration of sixty days to run concurrent with the sentence imposed at count one and a $500 fine;

Count three: reckless driving — a $200 fine and no further penalty;

Count four: careless driving — a $25 fine and no further penalty;

Count five: driving on roadway laned for traffic — a $25 fine and no further penalty; and

- 3 -

> Count six: abandonment of vehicles — a $500 fine and no further penalty.

*Id.* at 3. Appellant's aggregate sentence provides for eleven and a half (11½) to twenty-three (23) months of incarceration.

On June 9, 2023, Appellant filed a timely post-sentence motion seeking modification of his sentence. The trial court denied the motion on June 28, 2023, and Appellant timely appealed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant claims:

> The sentence imposed was an abuse of discretion where the sentence of total confinement was manifestly unreasonable, excessive, and too severe a punishment because it is disproportionate to [Appellant's] conduct and fails to take into account his rehabilitative needs and the unique facts and circumstances of this case, and is overall contrary to the fundamental norms and purposes of the Sentencing Code.

Appellant's Brief at 6.

Appellant challenges the discretionary aspects of his sentence. An appellant appealing the discretionary aspects of his sentence "has no absolute right to do so but, rather, must petition this Court for permission." *Commonwealth v. Starr*, 234 A.3d 755, 759 (Pa. Super. 2020) (citation omitted). To determine if this Court has jurisdiction, we must examine:

> (1) whether [the] appellant filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Commonwealth v. Banniger*, 303 A.3d 1085, 1096 (Pa. Super. 2023) (citation omitted).

Here, Appellant has timely appealed, filed a post-sentence motion preserving his issue, and included in his brief a concise statement of reasons for allowance of appeal pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief at 9. He also presents a substantial question. *Banniger*, *supra* (reiterating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question"). Thus, we consider Appellant's sentencing claim.

Appellant argues the trial court imposed an excessive sentence because "total confinement was disproportionate to [Appellant's] conduct and lacked consideration of his rehabilitative needs and specific circumstances." Appellant's Brief at 18.[2] Appellant asserts the trial court's "abuse of discretion in imposing an aggravated range sentence does not comport with the requirements of 42 Pa.C.S. § 9721(b)." *Id.* at 20.

We review Appellant's argument mindful of the following:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion occurs where the sentencing court ignored or misapplied the law,

---

[2] Notably, Appellant acknowledges that while this appeal was pending, he filed a successful motion for alternative housing with work release. *See* Appellant's Brief at 11-12; *see also* Order, 12/8/23 (trial court directing the Allegheny County Jail Warden to transfer Appellant to alternative housing).

exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

In conducting appellate review, we may not reweigh the sentencing factors and impose our own judgment in place of that of the trial court.

*Commonwealth v. Snyder*, 289 A.3d 1121, 1126-27 (Pa. Super. 2023) (citations omitted).

"In every case in which the court imposes a sentence for a felony or misdemeanor, … the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S. § 9721(b). The sentence "should call for total confinement that is consistent with ... the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *Id.*

Appellant claims "nothing of record supported the court's decision to sentence [Appellant] into the aggravated range." Appellant's Brief at 19. Appellant states,

the [trial c]ourt imposed an aggravated range sentence for what it described as [Appellant] acting selfishly. [Appellant] submits that his conduct of driving while not properly licensed, and his prior record, were contemplated by the recommended guideline range. Therefore, the [s]entencing [c]ourt's decision to impose an aggravated range sentence in this situation, concluding that [Appellant] acted selfishly, was an abuse of discretion and completely disproportionate to the crimes of conviction and [Appellant's] conduct that night.

*Id.*

According to Appellant, "it appears the trial court improperly punished [Appellant] for exercising his constitutionally guaranteed right to proceed to a trial on the matter[, where the trial court] interrupted trial counsel's statements prior to sentencing by interjecting that [Appellant] had not accepted responsibility because he was found guilty." *Id.* at 20. Appellant maintains he is a "productive member of society." *Id.* He states that he "coached hockey within the community and had completed 2 years of college," and emphasizes the "network of support" from his family and letters of reference from his employers. *Id.* at 20-21. Appellant concludes the trial court "did not give adequate consideration to [Appellant's] work ethic, contribution to the community, and network of support." *Id.* at 21. The record does not support Appellant's argument.

First, the trial court did not impose an aggravated range sentence. The court sentenced Appellant close to "the maximum of the standard range, which is 12 months to 24 months … in jail." N.T., 6/5/23, at 8-9. Our Supreme Court has explained:

> The Sentencing Guidelines, located at 204 Pa.Code § 303 *et seq.,* recommend ranges of minimum sentences based on the type of offense, the defendant's prior criminal history, and a variety of aggravating and mitigating factors. The standard recommended minimum sentence is determined by the intersection of the defendant's prior record score and the offense gravity score on the Basic Sentencing Matrix. 204 Pa.Code § 303.16. The Guidelines further recommend that if the court determines that aggravating or mitigating circumstances are present, it may impose a sentence that is a specified amount of time greater than the upper limit of the standard range or less than the lower limit of the standard range. 204 Pa.Code § 303.13.

***Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007).

As Appellant stated in his post-sentence motion:

Guidelines on th[e reckless endangerment] charge called for Restorative Sanctions in the mitigated range, three months in the bottom of the standard range, and twelve months at the high end of the standard range. There was no aggravated range sentence in the guidelines.

Motion to Modify Sentence, 6/9/23, at 1 n.2.

Also, the Guideline Sentence Form attached to the sentencing order shows an offense gravity score of 3 for recklessly endangering another person, and Appellant's prior record score of 4; the form confirms the standard range sentence is a minimum incarceration period of 3 to 12 months, with a statutory limit of 12 to 24 months of incarceration. The Commonwealth correctly observes:

While Appellant categorizes the imposed sentence as an "aggravated range sentence," it was not. [Appellant's Brief] at 19.[] The imposed sentence was within the standard range. Appellant in fact points this out[,] stating the guidelines called for "3 to 12 months in the standard range," directly before misstating that this was an "aggravated range sentence." [***Id.***] Appellant was sentenced to eleven and a half (11½) to twenty-four (2[3]) months [of] incarceration. This is a standard range sentence. As a standard range sentence, it is presumed to be an appropriate sentence. ***Commonwealth v. Fowler***, []893 A.2d [758,] 767 [(Pa. Super. 2006)].

Commonwealth's Brief at 20-21.

Next, Appellant misrepresents the context of the trial court's comments in his claim that the court "punished" him "for exercising his right … to proceed

to trial." Appellant's Brief at 20. At the sentencing hearing, the following exchange occurred between the trial court and Appellant's counsel:

THE COURT: Anything on behalf of [Appellant]?

[COUNSEL]: Yes, Your Honor. Your Honor, my client is remorseful for what happened that day. He stands before you ready to accept his responsibility for the crimes that you found him guilty of, Your Honor.

THE COURT: Well, he didn't [accept] responsibility. He was found guilty.

[COUNSEL]: I understand, Your Honor.

N.T., 6/5/23, at 2.

Appellant's counsel continued:

[Appellant] is gainfully employed, Your Honor. He has been diligently working. He has two jobs, … he's working 50 to 60 hours a week doing his best to be a productive member of society.

\*\*\*

Your Honor, my client is 31 years old. He's completed two years of college. Prior to all this he was helping the community. He was coaching hockey. He would like to get back into that once this whole thing is wrapped up.

*Id.* at 3-4. Counsel also read and introduced into the record three letters of reference from Appellant's employers. *Id.*

Finally, Appellant's counsel advocated for a mitigated range sentence "in light of the fact that [Appellant] is gainfully employed, that he is doing well in the community, that he has been out for some time now and has been doing very well." *Id.* at 5. Counsel requested a sentence of probation, but stated that if the trial court was "so inclined to go into the standard range, I would

- 9 -

ask that [the trial court] apply [Appellant's] time credit available …." *Id.*

Counsel added:

> [Appellant] has the time in at the Allegheny County Jail, as well as on electric home monitoring … and I ask you to take leniency on my client today and impose a period of as much probation that Your Honor deems necessary to make sure that he remains a productive member of society, to make sure that he keeps doing well to demonstrate to this [c]ourt that he is a better person.

*Id.* at 5-6.

In contrast, the Commonwealth advocated for "jail time" to "be assured [Appellant] won't get behind the wheel of a car and keep putting people at risk[.]" *Id.* at 9. The Commonwealth noted that Appellant had "a first DUI in 2014, a second DUI in 2018, a third DUI in 2021, and a resisting arrest in the same year." *Id.* at 7. The Commonwealth stated:

> I realize … this is not a DUI, [and Appellant] was also found guilty of recklessly endangering another person, but he did commit this while he was on probation for the third DUI, so I ask Your Honor, with what confidence can we possibly put [Appellant] on probation and expect him to act, as [Appellant's counsel], in good faith, has argued[,] that [Appellant] will act [lawfully] in the future by being gainfully employed and not causing any more trouble[?] I argue that we can have no confidence whatsoever.
>
> [Appellant], on the night in question, was driving while his license was suspended. He was already doing something that he knew full well that he wasn't supposed to do. I mean … at that point, he had had three DUIs. I think it's reasonable to assume that he's gone through the ringer with PennDOT many times and knows … that he's not allowed to drive, yet he still did.
>
> And not only did he [drive], but he left his car in the middle of the road, trying to avoid capture, trying to avoid apprehension. Your Honor saw … when [a] video was played, that he had the wherewithal to go in [the car] and grab his things and bring them home, but he left the car.

- 10 -

Your Honor, I believe that none of what we've seen … shows that anything less than incarceration would probably address his behavior; and that is, Your Honor, not even addressing the obvious, the biggest thing of all. This is not a homicide, but we are here today with the results of one because of [Appellant's] behavior, his lack of moral foundation, and his absolutely dismal judgment.

I'm looking through this case … through the facts … [and] I cannot find, for the life of me, one single mitigating factor. I can see a whole bunch of aggravating factors.

[The] legislature has not given Your Honor sentencing guidelines in the aggravated range for [the reckless endangerment] charge, but … I would argue that [Appellant] is deserving of no less than the maximum of the standard range, which is 12 to 24 months [of incarceration], to be run consecutive to [the mandatory sentence for driving with a suspended license], which is an additional 60 days in jail.

*Id.* at 7-9.

After the Commonwealth spoke, one of the deceased victim's six children, Michael Dailey, addressed the court on behalf of the family. *Id.* at 9-16. Mr. Dailey described "completely unbearable" suffering that "began around 3 a.m. with a frantic phone call," followed by the family "being huddled in a [hospital] triage room," and the "state of shock" at "witnessing our father's last breath." *Id.* at 10-11. Mr. Dailey relayed "the mental and physical toll this has taken," and explained how his father's death and brother's injuries have negatively impacted numerous friends and acquaintances in addition to family. *Id.* 15. Mr. Dailey stated that his brother, who sustained physical injuries, is "never going to be mentally okay," *id.* at 10; he further emphasized that his father was "a beacon" who was "selfless and honest" and "loomed large." *Id.* at 12-13. Mr. Dailey stated that "no

- 11 -

amount of jail time" would bring his father back, but asked the court "to do what's right," in the "hope that this sentence will allow us to get some much-needed rest and provide some closure [to] a horrific and agonizingly painful" experience. *Id.* at 15-16.

Lastly, the court heard from Appellant's mother, Roxanne Lawniczak, who expressed condolences and apologies to the victim's family, and spoke about the incident's negative impact on both families. *Id.* at 17-19. Ms. Lawniczak stated that Appellant "has come a long way" and asked that the trial court "not put him in jail." *Id.* at 18-19.

Before announcing Appellant's sentence, the trial court said it had considered everyone's statements, and specifically "note[d] and appreciate[d] the composure of both families." *Id.* at 20. The court reiterated that Appellant's "previous history, some of which is reflected in his prior record score, … brings the [reckless endangerment] charge up to that three to 12 months [minimum of incarceration]." *Id.* Further, the court found that had Appellant "accepted responsibility for his conduct that night which, at a minimum, was driving while not properly licensed, this would not have occurred." *Id.* at 20-21. The court addressed Appellant, stating,

> the heart of the matter, [Appellant], is that you acted … entirely in your own self-interest. You crashed your vehicle on one side of the roadway, found your way to the other side of the roadway, the berm, and left your vehicle partially on the roadway, not entirely so, but enough that it was obvious that it was impeding traffic, and you took advantage of a [G]ood Samaritan to leave that area, gather up your personal belongings from your car, and then leave without any concern for any future persons on the roadway, which ultimately resulted in the collision and death [of

the driver] and injuries [to his son], which is an entirely selfish act for which there has to be accountability ….

*Id.* at 21.

Upon review, we "must accord the sentencing court great weight, as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Zurburg*, 937 A.2d 1131, 1135 (Pa. Super. 2007) (citations omitted). In addition, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) (citation omitted). For the reasons discussed above, the trial court did not abuse its discretion in imposing Appellant's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  9/26/2024